**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DALE BIGHAM,

Plaintiff,

        v.

WEXFORD HEALTH SOURCES, *et al.*,

Defendants.

Civil Action No. TDC-20-0345

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CORIZON HEALTH, INC., DR. LIBERATUS DEROSA, MILLICENT JENKINS, RN, DR. PAUL MATERA, EMMANUEL ESIANOR, PA, DR. KASAHUN TEMESGEN, DR. MOFIKPARA WRIGHT, AND NICOLE HARGRAVES'S MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

Defendants Corizon Health, Inc., Dr. Liberatus DeRosa, Millicent Jenkins, RN, Dr. Paul Matera, Emmanuel Esianor, PA, Dr. Kasahun Temesgen, Dr. Mofikpara Wright, and Nicole Hargraves ("Corizon Defendants"),[1] by undersigned counsel, hereby submit this Memorandum of Law in support of their Motion to Dismiss or Alternatively for Summary Judgment.

## I.  STATEMENT OF FACTS

### A.     Plaintiff's Allegations

Dale Bigham ("Plaintiff"), an inmate incarcerated at Jessup Correctional Institution ("JCI"), initiated this action on February 3, 2020 by filing a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. CM/ECF No. 1. He filed an Amended Complaint on March 16, 2020. CM/ECF No. 6.

Plaintiff alleges PA Esianor falsified his medical records on April 16 and 17, 2019, though he does not allege what was false or how he was harmed. CM/ECF No. 1, P. 2. He also

---

[1] Undersigned counsel represents Corizon Defendants for allegations arising January 1, 2019 or later, after Corizon took over the medical services contract from Wexford.

alleges Dr. Temesgen refused medications to be prescribed to inmates, including himself, which may have caused severe pain, suffering, harm, injury, or death. *Id.* Plaintiff alleges he has pain and his bones and muscle tissue have deteriorated. CM/ECF No. 1, P. 5 He claims Corizon Defendants acted with deliberate indifference and reckless disregard of his serious medical condition. *Id.* Plaintiff alleges he was born with scoliosis and degenerative disc disease. CM/ECF No. 1-1, P. 1. He contends his condition has deteriorated and he now has difficulty walking and bulging between L5-S1. *Id.* Plaintiff alleges he requested a four-wheel walker but received a two-wheeled walker instead, which he claims causes more pain. CM/ECF No. 1-2, P. 1. Plaintiff further alleges Defendants have lied about getting him an MRI and he received no pain medication. CM/ECF No. 1-2, PP. 1-2.

In his Amended Complaint, Plaintiff alleges Corizon Defendants failed to appropriately address his severe back problem on the following dates: Dr. DeRosa on October 11, 2017, February 13, 2018, September 14, 2018, October 18, 2018, and April 17, 2019; RN Jenkins on April 16, 2019; Nicole Hargraves on January 24, 2020; Dr. Matera on December 22, 2014; PA Esianor on April 16, 2019; Dr. Wright on July 29, 2019, August 14, 2019, August 16, 2019, October 7, 2019, and October 21, 2019.[2] CM/ECF No. 6, PP. 1-3. He again contends that several Defendants have fraudulently entered information into his medical records but he does not specify who or when or state how he was harmed. CM/ECF No. 6, P. 4. Finally, Plaintiff alleges that medical care is to be kept to a minimum unless a patient is dying due to a Corizon policy. *Id.* He also seems to allege that Corizon and Wexford are part of the same corporation. *Id.*

---

[2] For the allegations against Corizon Defendants arising before January 1, 2019, Corizon Defendants adopt and incorporate herein the Motion to Dismiss or Alternatively for Summary Judgment filed by Wexford Defendants. CM/ECF No. 26, 26-3.

**B.    Plaintiff's Medical Conditions and Treatment**

On January 1, 2019, Corizon Health took over the contract to provide medical care to Maryland inmates at certain institutions. Ex. A: Decl. of Dr. Liberatus DeRosa ¶ 4.[3] On January 2, 2019, Plaintiff saw PA Jewaher Abubaker for provider sick call and requested a walker due to falling with a cane. Ex. A-1: Bigham MR, PP. 154-55. He reported lower back pain radiating to his left leg associated with numbness of his toes and his left leg giving out intermittently. *Id.* PA Abubaker noted that she would notify Millicent Jenkins regarding ordering a walker. *Id.*

On January 25, 2019, Plaintiff saw NP Motunrayo Adegorusi for provider chronic care for his cardiovascular issues, internal medicine, and pain management. Ex. A-1: PP. 158-62. Plaintiff had a history of hypertension but his blood pressure was at goal that day. Plaintiff also had a history of hyperlipidemia, and diet and exercise were discussed. He reported he had not been taking his Lipitor and he was encouraged to take it. Adegorusi noted Plaintiff had a history of chronic back pain currently managed with Tramadol and acetaminophen. Plaintiff verbalized adequate pain relief. *Id.* Adegorusi submitted a non-formulary drug request ("NFDR") for Tramadol 50 mg, and Dr. Kasahun Temesgen approved the request. Ex. A-1: PP. 163-64. Tramadol is a narcotic pain medication and is classified as a Schedule IV controlled substance by the Drug Enforcement Administration (DEA). Ex. A: ¶ 5. On February 5, 2019, Plaintiff received a walker. Ex. A-1: PP. 165, 358.

On April 16, 2019, Plaintiff saw RN Jenkins and requested to exchange his two-wheeled rolling walker with a four-wheeled rolling walker with a seat. Ex. A-1: P. 166; Ex. B: Decl. of Millicent Jenkins ¶ 4. Jenkins determined that a four-wheeled walker would not be appropriate

---

[3] Some of Plaintiff's medical care arising before January 1, 2019 is addressed in the Affidavit of Dr. Kasahun Temesgen attached as an exhibit to Wexford Defendants' Motion to Dismiss or Alternatively for Summary Judgment. CM/ECF No. 26-5.

for Plaintiff and encouraged him to continue using his two-wheeled walker. Ex. B: ¶ 4. The four-wheeled walker keeps rolling once it is started and the patient has to use a hand brake to stop it. Ex. B: ¶ 5. In Jenkins's nursing judgment, Plaintiff would have had great difficulty using a four-wheeled walker because of its hand brake requirement. *Id.* Plaintiff has to be trained to use such a walker, and without a therapist evaluating him and finding he was stable enough to use it, Jenkins believed it would be too risky for him. *Id.* She encouraged him to continue using the two-wheeled walker because that walker does not have hand brakes. *Id.* The four-wheeled walker is for inmates who are stable enough to push it and handle the brakes but Plaintiff was not. *Id.* Jenkins never disregarded Plaintiff's medical needs; she made the decision she thought was best for his safety. *Id.*

Also on April 16, 2019, Plaintiff saw PA Esianor for complaints of back pain. Ex. A-1: PP. 171-72. Esianor noted Plaintiff was a 56-year-old male who was seen in the past for the same complaint by another mid-level provider. *Id.* He was currently taking Tramadol and Tylenol Extra Strength but reported they were ineffective and requested additional pain medication. *Id.* Esianor informed Plaintiff that he would order Biofreeze gel. *Id.* Plaintiff refused an examination. *Id.* Esianor assessed chronic degeneration of the lumbar/lumbosacral disc. *Id.* Plaintiff's medications included Tramadol, HCTZ, Aspirin, Lisinopril, Tylenol ES, Lipitor, Claritin, and Calcium and Vitamin D. *Id.*

On April 17, 2019, Dr. DeRosa saw Plaintiff for a chronic care visit. Ex. A: ¶ 8; Ex. A-1: PP. 177-79. Plaintiff had no issues with his cardiovascular/hypertension medications and his blood pressure was controlled. *Id.* Plaintiff reported chronic constipation and Dr. DeRosa suspected Plaintiff's narcotics (Tramadol) may be the problem and started him on Miralax. *Id.* Dr. DeRosa requested labs to determine the degree of Plaintiff's hyperlipidemia on Lipitor. *Id.*

He noted Plaintiff had a history of cervical disk disease going back to 1994 when he had two surgeries. *Id.* Plaintiff also reported residual left arm pain, though it was now minor. *Id.* Dr. DeRosa noted Plaintiff had been suffering from lumbar disk disease for the past 8-9 years. *Id.* He reported pain was continuing to worsen and he was unable to walk any distance without pain and stopping. *Id.* Plaintiff reported using a walker but wanted a sitting walker. *Id.* Dr. DeRosa performed a physical examination and concluded Plaintiff did not need a sitting walker for the few trips he made. *Id.* Plaintiff's walker height was adjusted and he felt much better support. *Id.*

On examination, Plaintiff displayed severe left radiculopathy and numbness on the left lower leg laterally and medially with progression to the medial aspect over time. Ex. A: ¶ 9; Ex. A-1: PP. 177-79. He had decreased position sense to the legs, though no motor weakness. *Id.* The deep tendon reflexes ("DTRs") were greater on the right leg than the left. *Id.* Dr. DeRosa submitted a consultation request for an MRI to rule out correctable nerve compression. Ex. A-1: PP. 173-74. He also submitted a NFDR for Lipitor, Loratadine, and Tramadol, which Dr. Temesgen approved. Ex. A-1: PP. 180-81. On April 23, 2019, Dr. DeRosa submitted a NFDR for Polyethylene Glycol, a laxative, which Dr. Temesgen approved. Ex. A: ¶ 10; Ex. A-1: PP. 183-84.

On July 8, 2019, Plaintiff saw NP Bernard Alenda in provider sick call for complaints of headaches due to Tramadol. Ex. A-1: PP. 189-90. Plaintiff reported he was currently waiting for an MRI but he wanted a change from Tramadol. *Id.* Alenda prescribed Tylenol #3 and Robaxin. *Id.* Tylenol #3 contains acetaminophen and codeine. Ex. A: ¶ 11. Codeine is an opioid pain medication and acetaminophen is a less potent pain reliever that increases the effects of codeine. *Id.* Tylenol #3 is used to relieve moderate to severe pain. *Id.* Robaxin is a muscle relaxant. *Id.*

On July 29, 2019, Plaintiff saw Dr. Mofikpara Wright for provider chronic care. Ex. A-1: PP. 199-201. Dr. Wright noted Plaintiff had a history of cervical spinal stenosis and degenerative lumbar disk disease with gait abnormality. *Id.* Plaintiff was ambulating with a two-wheeled walker but reported he occasionally wobbled with it almost to the point of falling. *Id.* He requested a four-wheeled walker for better ambulation. *Id.* Dr. Wright performed a physical examination and noted the spine was positive for posterior tenderness and paravertebral muscle spasm. *Id.* A straight leg test was negative and an elevated leg test was negative. *Id.* Dr. Wright prescribed HCTZ, Claritin, Miralax, Calcium + Vitamin D, Lisinopril, Robaxin, Aspirin, Lipitor, and Tylenol #3. *Id.* Dr. Wright also ordered a lipid panel. Ex. A-1: P. 196.

On August 14, 2019, Plaintiff went to Bon Secours Hospital for an MRI of the lumbar spine. Ex. A-1: PP. 466-67. The radiology report noted the exam was limited and incomplete due to patient claustrophobia in the MRI machine. *Id.* The report documented degenerative changes at L3-4 through L5-S1, without high-grade central spinal canal narrowing. *Id.* Neural foraminal narrowing was mild to moderate. *Id.* A small cyst was seen medially in the interpolar region of the right kidney. *Id.* A small T2 hyperintensity in the liver was incompletely characterized, and most likely represented either a cyst or hemangioma. *Id.* On August 16, 2019, Dr. Wright submitted a request for an open MRI scan of the lumbosacral spine due to Plaintiff's claustrophobia. Ex. A-1: PP. 212-14.

On September 18, 2019, Plaintiff saw NP Alenda for complaints of knee pain beginning two months ago. Ex. A-1: PP. 220-21. He reported the knee was occasionally swollen. *Id.* Plaintiff used a walker because of back pain and to help with balance. *Id.* He denied recent trauma. *Id.* Alenda assessed possible knee arthritis and ordered glucosamine tabs and a knee x-

ray. *Id.* On September 24, 2019, Plaintiff had an x-ray of the left knee. Ex. A-1: P. 328. The radiologist found no acute osseous abnormality. *Id.*

On October 7, 2019, Dr. Wright submitted another request for an open MRI of the lumbosacral spine Ex. A-1: PP. 229-31. On October 21, 2019, Plaintiff saw Dr. Wright for a chronic care visit. Ex. A-1: PP. 240-42. Plaintiff reported a history of chronic back pain with shooting pain down both legs and numbness in the toes of his left foot. *Id.* He also reported he heard a popping sound involving his left knee a few weeks prior. *Id.* During the visit, Plaintiff complained of increased difficulty ambulating with a walker and requested a wheelchair. *Id.* He also reported that the current pain regimen only lasted for a few hours. *Id.* Dr. Wright noted he was currently housed in a handicapped cell with bed rails to aid and support ambulation. *Id.* He performed a physical examination and noted the spine was positive for posterior tenderness. *Id.* The left knee was also tender with moderately reduced range of motion. *Id.* Dr. Wright prescribed Miralax, Lisinopril, Lipitor, Claritin, Robaxin, Aspirin, Tylenol #3, Glucosamine, calcium + Vitamin D, HCTZ, and Aspercreme. *Id.* He also submitted a consult request for an MRI scan of the left knee and submitted a NFDR for Glucosamine, a lidocaine patch, and Polyethylene glycol, which Dr. Temesgen approved. Ex. A-1: PP. 236-39.

On October 24, 2019, Plaintiff went to Johns Hopkins Outpatient Center for an open MRI of the lumbar spine. Ex. A-1: PP. 464-65. The radiologist reviewed the images and found it showed: (1) multilevel disc degeneration and facet hypertrophy, resulting in mild neuroforaminal narrowing at L3-4, L4-5, and L5-S1; (2) Grade 1 retrolisthesis L4 on L5; and (3) Mixed Modic type I and type II degenerative changes at L5-S1 with significant loss of intervertebral disc height. *Id.*

On November 6, 2019, Dr. Wright submitted a NFDR for Tylenol #3. <u>Ex. A-1</u>: PP. 245-46. On November 13, 2019, Dr. Temesgen approved Tylenol #3 for 21 days to taper and discontinue. <u>Ex. A-1</u>: PP. 250-51. On December 5, 2019, Plaintiff signed a receipt for a wheelchair. <u>Ex. A-1</u>: P. 352.

On January 9, 2020, Plaintiff saw Dr. Wright for a provider visit. <u>Ex. A-1</u>: PP. 263-64. Dr. Wright noted he discussed the MRI results with Plaintiff, who still complained of chronic back pain. Plaintiff reported that Naprosyn recently prescribed had not been helpful with pain relief. *Id.* Dr. Wright prescribed Tylenol #3 and Cymbalta for pain and submitted a consult request for an orthopedist visit. <u>Ex. A-1</u>: PP. 261-64.

On January 21, 2020, Plaintiff saw Dr. Wright for provider chronic care. <u>Ex. A-1</u>: PP. 268-70. Plaintiff complained of increasing lower back pain for the past month with numbness involving the toes of his right foot. *Id.* He reported Cymbalta was no longer effective in relieving his back pain. *Id.* Plaintiff ambulated with a cane. *Id.* Dr. Wright discussed the MRI results with him. *Id.* He prescribed Miralax, Aspirin, Biofreeze, HCTZ, Aspercreme, Lisinopril, Lipitor, Claritin, Robaxin, Glucosamine, and Calcium + Vitamin D. *Id.* He submitted a NFDR for Glucosamine, Polyethylene glycol, and a Lidocaine patch, which Dr. Temesgen approved. <u>Ex. A-1</u>: PP. 266-67. Dr. Wright also submitted a NFDR for Mentho gel, which Dr. Temesgen approved. <u>Ex. A-1</u>: PP. 271-72.

On March 18, 2020, Plaintiff saw Dr. Wright for a chronic care visit. <u>Ex. A-1</u>: PP. 281-83. Plaintiff complained of chronic back pain radiating to both lower extremities. *Id.* Dr. Wright noted Plaintiff was wheelchair bound, unable to stand without support. *Id.* Plaintiff was previously on Cymbalta but the medication was discontinued because he says he got no pain relief from it. *Id.* Dr. Wright prescribed Lipitor, Miralax, Robaxin, Claritin, Calcium + Vitamin

D, Lisinopril, Lidocaine, Glucosamine, HCTZ, Aspirin, Aspercreme, and Biofreeze. *Id.* Dr. Wright submitted a NFDR for Glucosamine and a Lidocaine patch, which Dr. Temesgen approved. Ex. A-1: PP. 279-80. On March 19, 2020, Dr. Wright submitted a NFDR for Polyethylene glycol, which Dr. Temesgen approved. Ex. A-1: PP. 284-85.

On June 18, 2019, Plaintiff saw NP Alenda for lower back pain and neuropathy. Ex. A-1: PP. 655-56. Alenda noted Plaintiff had a history of cervical spinal stenosis, was in a wheelchair, and complained of numbness in his toes and lower back pain. *Id.* He also noted that the orthopedic consult written on January 9, 2020 was not approved. *Id.* Alenda prescribed Tramadol 50 mg twice per day (BID) and Baclofen 10 mg BID for pain. *Id.* He submitted a NFDR for the Tramadol, which Dr. Temesgen approved. Ex. A-1: PP. 653-54.

On July 14, 2020, Dr. Naznin Esphani submitted a NFDR for Tramadol, calcium carbonate/vitamin D3, and Robaxin, which Dr. Temesgen approved. Ex. A-1: PP. 632-33. On July 15, 2020, Dr. Esphani submitted a NFDR for Lidocaine, which Dr. Temesgen approved. Ex. A-1: PP. 627-28.

On July 22, 2020, Plaintiff had a telephone visit with Dr. Temesgen for a pain management review. Ex. A-1: P. 623; Ex. C: Decl. of Dr. Kasahun Temesgen ¶ 4. Dr. Temesgen noted Plaintiff was a 57-year-old, wheelchair-bound male with a history of chronic back pain and radiculopathy to his left side for more than ten years with weakness and tingling involving the left lower extremity. Ex. A-1: P. 623. Dr. Temesgen reviewed the October 24, 2019 MRI report and noted the findings were consistent with multilevel disc degeneration and facet hypertrophy resulting in mild neuroforaminal narrowing from L3 to S1 with significant loss of intervertebral spaces. *Id.* Plaintiff also had degenerative joint disease (DJD) in his right knee. *Id.* Dr. Temesgen noted he was using a wheelchair because of pain and his knee giving out when walking long

distances. *Id.* Plaintiff reported his pain control was adequate with current medications. *Id.* Dr. Temesgen noted Plaintiff needed an orthopedics evaluation and a follow up with ophthalmology for a cataract. *Id.* He submitted another consult request for Plaintiff to see an orthopedic specialist. Ex. A-1: PP. 624-25.

Plaintiff's back condition continues to be worked up. Ex. A: ¶ 26. It is Dr. DeRosa's opinion within a reasonable degree of medical certainty that the care and treatment Plaintiff has received for his back pain has met or exceeded the standard of care. *Id.* He has continued to receive appropriate pain medications for his back pain. *Id.* It is also Dr. Temesgen's opinion within a reasonable degree of medical certainty that Plaintiff has received and continues to receive appropriate medical care and medications for his condition. Ex. C: ¶ 4.

Due to the coronavirus outbreak, all outside referrals are currently on hold unless it is a life-threatening condition. Ex. C: ¶ 5. After restrictions are lifted, the facilities will resume sending patients for outside referrals. *Id.* Plaintiff's degenerative disk disease is not life threatening. Ex. C: ¶ 6. His October 24, 2019 MRI showed only mild foraminal narrowing. *Id.* The MRI report shows there is a loss of disk space, but it is mild. *Id.* Typically, neurosurgeons do not operate unless there is severe spinal stenosis or signs of cord compression, neither of which Plaintiff currently has. *Id.* Although surgery might not be an option, the orthopedic surgeon could recommend more conservative treatment such as epidural steroid injections or physical therapy. *Id.*

Dr. Temesgen spoke to Plaintiff by phone on July 22, 2020 and told him they were working on an orthopedics consult. Ex. A-1: P. 623; Ex. C: ¶ 7. Plaintiff told Dr. Temesgen his pain medication adequately controlled his pain. *Id.* Dr. Temesgen submitted another consult request for Plaintiff to see an orthopedic specialist. Ex. A-1: PP. 624-25.

Corizon does not have any policy of keeping medical care to a minimum unless the patient is dying. Ex. A: ¶ 27; Ex. C: ¶ 4. Dr. DeRosa has never been instructed by anyone at Corizon to keep medical care to a minimum or otherwise deny any medically necessary care. Ex. A: ¶ 27. Medical providers use their medical judgment to determine the appropriate course of care for each patient. Ex. C: ¶ 4. Corizon does not have a bonus incentive program to reward health care providers to withhold medically necessary care. Id. Corizon is not a part of Wexford, and they are two separate business entities. Id.

## II. LEGAL ARGUMENT

### A.     Motions to Dismiss

As to a 12(b)(6) motion to dismiss, a plaintiff fails to state a claim when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). This requirement "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Supreme Court has held that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). However, the Fourth Circuit has "not read *Erickson* to

undermine *Twombly's* requirement that a pleading contain more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying *Twombly* standard in dismissing pro se complaint); *accord Atherton v. Dist. of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint ... 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'") (quoting *Erickson*, 551 U.S. at 94 and *Iqbal*, 556 U.S. at 679).

**B.    Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate against a plaintiff who fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Failure to demonstrate a genuine issue for trial will result in summary judgment. *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 951 (4th Cir. 1995).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The Court may rely on only facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). "Unsupported speculation is not sufficient to defeat a

summary judgment motion." *Id.* (citing *Ash v. United Parcel Serv.*, 800 F.2d 409, 411-12 (4th Cir. 1986)).

## C.    Deliberate Indifference Claims Under 42 U.S.C. § 1983

Federal claims by prisoners that they received constitutionally deficient medical care in violation of the Eighth Amendment are governed by the deliberate indifference standard. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* The "deliberate indifference" standard is made up of (1) an objective component requiring that the pain or condition be sufficiently serious; and (2) a subjective component requiring that the offending officials acted with a sufficiently culpable state of mind. *Id.* at 104-06. The objective component is satisfied by a serious medical condition and the subjective component is satisfied by showing deliberate indifference by prison officials. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). "[A] 'serious ... medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference requires that an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. It requires that a prison official "both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Indeed, absent subjective knowledge, a prison official is not liable even "if the risk was obvious and a reasonable prison official would have noticed it." *Id.* at 842.

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *accord Johnson*, 145 F.3d at 168. "Nor does a prisoner's disagreement with medical personnel over the course of his treatment make out a cause of action." *Taylor v. Bennett*, 105 F. Supp.2d 483, 487 (E.D. Va. 2000) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)).

There is no *respondeat superior* liability under 42 U.S.C. § 1983, and local governments or corporations performing a functionally traditionally performed by the government may not be sued under § 1983 simply for employing a tortfeasor. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990).

> "Although the 'principles of § 1983 policy-maker liability were articulated in the context of suits brought against municipalities and other local government defendants,' they 'are equally applicable to a private corporation acting under color of law when an employee exercises final policymaking authority concerning an action that allegedly causes a deprivation of federal rights.'"

*Safar v. Corizon, Inc.*, No. GJH-16-3277, 2018 WL 6505499, at *6 (D. Md. Dec. 11, 2018) (unpublished) (quotations omitted); *see also Fields v. Corizon Health, Inc.*, 490 Fed. App'x. 174, 181-182 (11th Cir. 2012) (finding that private entity providing medical services to inmates served a state function and could be held liable under § 1983).

Plaintiffs suing under § 1983 seeking to impose liability on a municipality must adequately plead and prove the existence of an official policy or custom "that is fairly

attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Similarly, "private corporations can only be held liable under § 1983 if 'an official policy or custom of the corporation causes the alleged deprivation of federal rights.'" *Rodriguez v. Smithfield Packing Co., Inc*., 338 F.3d 348, 355 (4th Cir. 2003) (quoting *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999)).

### D.    Plaintiff Fails to State a Claim Against Corizon Defendants

#### 1.    *Corizon*

In his Amended Complaint, Plaintiff makes the conclusory allegation that Corizon has a policy of keeping medical care to a minimum unless a patient is dying. *See* CM/ECF No. 6, P. 4. But this naked assertion does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. Although Plaintiff is proceeding *pro se*, he is still required to "plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Erickson*, 551 U.S. at 94; *Iqbal*, 556 U.S. at 679. Plaintiff provides no supporting facts tending to show the existence of any such custom or policy. *See* CM/ECF No. 1, 6. His claim against Corizon is nothing more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" which the Supreme Court has held fails to state a claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Plaintiff fails to sufficiently plead the existence of a Corizon custom or policy that led to the violation of his constitutional rights and Corizon should be dismissed from this action.

#### 2.    *Dr. DeRosa and the Identical Amended Complaint Claims*

In his Complaint, Plaintiff alleges he told Dr. DeRosa that his condition had deteriorated, but he does not allege that Dr. DeRosa committed any wrongdoing. CM/ECF No. 1-1, P. 1;

CM/ECF No. 1-2, P. 1. Instead, he generally and vaguely alleges that "Defendants" failed to provide adequate treatment. *See id.* These vague generalizations in the Complaint are insufficient to state a claim against Dr. DeRosa. Similarly, in the Amended Complaint, Plaintiff only alleges that Dr. DeRosa failed to appropriately address even the required minimum standards of medical care and treatment for his severe back problem on five different dates from 2017 to 2019. CM/ECF No. 6, P. 1. Although Plaintiff at least provides dates for these encounters, he wholly fails to include any facts regarding what Dr. DeRosa is alleged to have done improperly. *See id.* Instead, this is another "unadorned, the-defendant-unlawfully-harmed-me accusation," albeit with dates provided.

Plaintiff has not alleged what Dr. DeRosa did or failed to do, instead simply asserting the legal conclusion that the treatment failed to meet the minimum standard of care. This Court is not bound to accept bare legal conclusions when reviewing a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Plaintiff's Amended Complaint does not include any supporting factual allegations and it fails to state a claim against Dr. DeRosa.

Plaintiff's Amended Complaint raises the same exact allegations against all Corizon Defendants, i.e., that they failed to appropriately address even the required minimum standards of medical care and treatment for his severe back problem on different dates. CM/ECF No. 6. This Court should also dismiss any claims raised in the Amended Complaint against the remaining Corizon Defendants for the same reasons set forth above. The claims are conclusory, lack sufficient factual support, and are in essence bare legal conclusions.

3.      *PA Esianor*

The only allegation Plaintiff raises in the Complaint against Esianor is that he falsified his medical records on April 16 and 17, 2019. CM/ECF No. 1, P. 2. But Plaintiff fails to include facts such as what was false and how the allegedly false entries harmed him. *See id.* "These bare and conclusory allegations fail to state a claim upon which relief can be granted." *Smith v. Chilcote*, No. 1:13CV1173 CMH/TRJ, 2014 WL 585857, at *3 (E.D. Va. Feb. 12, 2014) (unpublished) (finding that inmate's claim that on different dates each defendant refused him his medication and falsified information in his medical record failed to state a claim). Plaintiff's Complaint fails to state a claim against Esianor and he should be dismissed from this action.

4.      *Dr. Temesgen*

In the Complaint, Plaintiff alleges that Dr. Temesgen refused medications to be prescribed to inmates, including Plaintiff, which may have caused severe pain, suffering, harm, injury, or death. CM/ECF No. 1 P. 2. However, Plaintiff fails to include sufficient facts to support this claim such as what medication was not prescribed and when. Plaintiff's conclusory allegation fails to state a claim against Dr. Temesgen. *See Iqbal*, 556 U.S. at 678. Plaintiff's Amended Complaint contains no allegations against Dr. Temesgen and he is not listed in the caption of the Amended Complaint. *See* CM/ECF No. 6. Plaintiff has not stated a claim against Dr. Temesgen, and he should be dismissed.

5.      *Dr. Matera, Dr. Wright, RN Jenkins, and HSA Hargraves*

In Plaintiff's Complaint, he lists Dr. Matera, RN Jenkins, and Health Services Administrator ("HSA") Nicole Hargraves as defendants, but the Complaint contains no factual allegations regarding them. *See* CM/ECF No. 1. Dr. Wright is not listed as a defendant in the Complaint and Plaintiff raises no allegations against him therein. *See id.* When a complaint

contains no factual allegations against a named defendant, the plaintiff fails to state a claim against them. *See Cofield v. Md.*, No. CCB-16-1985, 2018 WL 4007649, at *4 (D. Md. Aug. 21, 2018) (unpublished) (citing *Iqbal*, 556 U.S. at 678).  Plaintiff's Amended Complaint fails to state a claim against Dr. Matera, Dr. Wright, RN Jenkins, and HSA Hargraves for the reasons set forth above.

Plaintiff's Complaint and Amended Complaint fail to state a claim against any Corizon Defendant, and his claims should be dismissed.

**E.     Corizon Defendants are Entitled to Summary Judgment**

Even assuming that Plaintiff stated a claim against Corizon Defendants, they are still entitled to summary judgment. The Declaration of Dr. DeRosa, attached hereto as Exhibit A, a true and correct copy of Plaintiff's relevant medical records, attached to Dr. DeRosa's Declaration as Exhibit A-1, the Declaration of RN Jenkins, attached hereto as Exhibit B, and the Declaration of Dr. Temesgen, attached hereto as Exhibit C show that Plaintiff received constitutionally adequate medical care.[4]

As an initial matter, Corizon Defendants do not dispute that Plaintiff's back pain and degenerative disc disease constitute objectively serious medical needs. *See Iko*, 535 F.3d at 241. However, the medical records demonstrate that Corizon Defendants were not deliberately indifferent to those needs.

---

[4] "In determining whether a prisoner has received adequate medical treatment, this Court is entitled to rely on the affidavits of medical personnel and prison medical records kept in the ordinary course of operation." *Bennett v. Reed*, 534 F. Supp. 83, 86 (E.D.N.C. 1981), *aff'd*, 676 F.2d 690 (4th Cir. 1982). When "it appears from the entire record that the prison medical authorities have made a sincere and reasonable effort to handle plaintiff's medical problems, plaintiff's constitutional rights have not been violated pursuant to 42 U.S.C. § 1983." *Id.* at 87.

*1.     Corizon*

Corizon became the contracted health care provider on January 1, 2019, and cannot be held responsible for any alleged violations that occurred prior to that date.[5] Ex. A: ¶ 4. In any event, no Corizon policy, practice, or custom led to a violation of Plaintiff's Eighth Amendment rights. Instead, the evidence shows that Corizon does not have any policy of keeping medical care to a minimum unless the patient is dying. Ex. A: ¶ 27; Ex. C: ¶ 4. Dr. DeRosa has never been instructed by anyone at Corizon to keep medical care to a minimum or otherwise deny any medically necessary medical care. Ex. A: ¶ 27. Medical providers use their medical judgment to determine the appropriate course of care for each patient. Ex. C: ¶ 4. Corizon does not have a bonus incentive program to reward health care providers to withhold medically necessary care. *Id.*

In addition, the medical records show that Corizon has approved outside diagnostic testing for Plaintiff, including two MRIs, x-rays, and numerous medications. Appointments with an orthopedist and ophthalmologist are pending. Plaintiff's conclusory allegation that Corizon will only provide minimum medical care unless a patient is dying is refuted by the evidence of his own treatment, and Corizon should be granted summary judgment.

*2.     Dr. Matera*

The only allegation Plaintiff raises against Dr. Matera is a claim from December 22, 2014. CM/ECF No. 6, P. 2. This claim is barred by the statute of limitations.

"Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts."

---

[5] Corizon is not a part of Wexford, and they are two separate business entities. Ex. C: ¶ 4.

*Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In Maryland, the applicable statute of limitations is three years from the date of the occurrence. Md. Cts. & Jud. Pro. Code § 5-101.

Plaintiff filed his Complaint on February 3, 2020. CM/ECF No. 1. Thus, Plaintiff's allegation against Dr. Matera from December 22, 2014 is time-barred and Dr. Matera is entitled to summary judgment. *See* Md. Cts. & Jud. Pro. Code § 5-101.

### 3.   Dr. DeRosa

Plaintiff alleges that Dr. DeRosa failed to appropriately address even the required minimum standards of medical care/treatment for his severe back problem on April 17, 2019.[6] CM/ECF No. 6, P. 1.

The medical records show that Dr. DeRosa saw Plaintiff on April 17, 2019 for a chronic care visit. Ex. A: ¶¶ 8-9; Ex. A-1: PP. 177-79. Dr. DeRosa reviewed Plaintiff's medical history and documented his history of back issues. Ex. A: ¶¶ 8-9; Ex. A-1: PP. 177-79. He performed a physical examination and concluded that Plaintiff did not need a sitting walker for the few trips he made. Ex. A: ¶¶ 8-9; Ex. A-1: PP. 177-79. Instead, the walker height was adjusted and Plaintiff felt much better support. Ex. A: ¶¶ 8-9; Ex. A-1: PP. 177-79. He also submitted a request for an MRI of Plaintiff's back to rule out correctable nerve compression and prescribed, among other things, Tramadol for pain relief. Ex. A: ¶¶ 8-9; Ex. A-1: PP. 177-79.

The medical records and Dr. DeRosa's declaration conclusively show that he was not deliberately indifferent to Plaintiff's back problems or any other issue. There is simply no evidence that Dr. DeRosa ignored a substantial risk of serious harm of which he was aware. *See Farmer*, 511 U.S. at 837. Dr. DeRosa thoroughly investigated Plaintiff's back issues and

---

[6] The allegations arising before January 1, 2019 are addressed in Wexford Defendants' Motion to Dismiss or Alternatively for Summary Judgment.

provided appropriate treatment. To the extent Plaintiff disagrees with Dr. DeRosa's treatment decisions, including the type of walker provided or medication prescribed, such disagreement fails to even state a claim for deliberate indifference. *See Wright*, 766 F.2d at 849; *Taylor*, 105 F. Supp.2d at 487. And even if Plaintiff alleges that Dr. DeRosa was negligent or committed malpractice, that also fails to state a claim for deliberate indifference. *See Estelle*, 429 U.S. at 106; *Johnson*, 145 F.3d at 168. Accordingly, Dr. DeRosa is entitled to summary judgment.

4.    *RN Jenkins*

Plaintiff alleges Jenkins failed to appropriately address even the required minimum standards of medical care/treatment for his severe back problem on April 16, 2019. CM/ECF No. 6, P. 1. The medical records and Jenkins's declaration establish that she was not deliberately indifferent to Plaintiff's back pain on that date. Ex. A-1: P. 166; Ex. B. Although Plaintiff wanted to exchange his two-wheeled walker for a four-wheeled walker with a seat, Jenkins believed it would be unsafe for Plaintiff to try to use a four-wheeled walker, which has an additional hand brake mechanism that the two-wheeled walker does not have. Ex. B: ¶¶ 4-5. Jenkins explained that Plaintiff would need to be trained to use such a walker, and she did not believe he was stable enough to push a four-wheeled walker without falling. *Id.*

The evidence shows that Jenkins used her nursing judgment and made the decision she thought was best for Plaintiff's safety. Ex. B: ¶ 5. Rather than ignoring his medical needs, Jenkins had his medical needs in mind when she made the decision. It is clear that Plaintiff disagrees with Jenkins's assessment of his ability to use the four-wheeled walker with the hand brake. However, his disagreement fails to show deliberate indifference. *See Wright*, 766 F.2d at 849; *Taylor*, 105 F. Supp.2d at 487. Even if Jenkins was incorrect in her assessment, that would

show negligence at most, which falls short of deliberate indifference. *See Estelle*, 429 U.S. at 106; *Johnson*, 145 F.3d at 168. Accordingly, Jenkins is entitled to summary judgment.

> 5.    *Dr. Temesgen*

Plaintiff alleges only that Dr. Temesgen refused medications to be prescribed to inmates, including Plaintiff, which may have caused severe pain, suffering, harm, injury, or death. CM/ECF No. 1. However, the medical records show that is not the case. Instead, the records show that Dr. Temesgen approved numerous NFDRs submitted by multiple providers for nonformulary medications, including for the narcotic pain medication Tramadol and Tylenol #3 which contains the narcotic codeine. Ex. A: ¶¶ 5, 9-10, 17, 19, 22-24; Ex. A-1: PP. 163-64, 180-81, 183-84, 236-39, 250-51, 266-67, 271-72, 279-80, 284-85, 296-97. Accordingly, Dr. Temesgen is entitled to summary judgment.

> 6.    *PA Esianor*

Plaintiff alleges that Esianor falsified his medical records on April 16 and 17, 2019 and failed to appropriately address even the required minimum standards of medical care/treatment for his severe back problem on April 16, 2019. CM/ECF No. 1, P. 2; CM/ECF No. 6, P. 3.

As explained above, Plaintiff's conclusory allegations that Esianor falsified his medical records and failed to provide appropriate treatment on a specific date fails to state a claim. *See Smith*, 2014 WL 585857 at *3. In any event, Esianor saw the patient on April 16, 2019 but did not see him on April 17, 2019. Ex. D: Decl. of Emmanuel Esianor ¶ 4. Esianor never falsified any information in Plaintiff's medical record or any other inmate's medical record and his record from April 16, 2019 is a true and correct account of the visit on that date. *Id.* ¶¶ 4-5. The record shows that Esianor did not ignore Plaintiff's back condition. Ex. A-1: PP. 171-72. Although Plaintiff refused a full physical examination, Esianor reviewed Plaintiff's medical history and

current medications, assessed chronic degeneration of the lumbar/lumbosacral disc, and added Biofreeze gel as an additional pain reliever. Ex. D: ¶ 5; Ex. A-1: PP. 171-72.

The medical records show that Esianor did not disregard an excessive risk of harm to Plaintiff of which he was aware. Thus, he was not deliberately indifferent and is entitled to summary judgment. *See Farmer*, 511 U.S. at 837.

    7.    *Dr. Wright*

Plaintiff alleges Dr. Wright failed to appropriately address even the required minimum standards of medical care/treatment for his severe back problem on July 29, 2019, August 14, 2019, August 16, 2019, October 7, 2019, and October 21, 2019. CM/ECF No. 6, P. 3.

The medical records show that Dr. Wright was not deliberately indifferent to Plaintiff's back pain. On July 29, 2019, Dr. Wright reviewed Plaintiff's medical history, performed a thorough physical examination, ordered labs, and ordered medications including Tylenol #3 for pain. Ex. A-1: PP 196, 199-201. The medical record does not contain a record of Plaintiff seeing Dr. Wright on August 14, 2019, which was the date he went out for an MRI. Ex. A-1: PP. 466-67. On August 16, 2019 and October 7, 2019, Dr. Wright submitted requests for Plaintiff to have an open MRI, but it does not appear that he saw Plaintiff on those dates, as there was no record of a visit in the medical records. Ex. A-1: PP. 212-14, 229-31.

On October 21, 2019, Plaintiff saw Dr. Wright for a chronic care visit. Ex. A-1: PP. 240-42. Dr. Wright performed a physical examination and noted Plaintiff's spine was tender and the left knee was tender with moderately reduced range of motion. *Id.* He prescribed medications for Plaintiff's many issues, including Tylenol #3 and a Lidocaine patch for pain. *Id.* He also submitted a request for an MRI of the left knee. *Id.* On this record no jury could find that Dr.

Wright ignored or was otherwise deliberately indifferent to Plaintiff's medical needs. Accordingly, Dr. Wright is entitled to summary judgment.

        8.     *HSA Hargraves*

Plaintiff alleges that HSA Hargraves failed to appropriately address even the required minimum standards of medical care/treatment for his severe back problem on January 24, 2020. CM/ECF No. 6, P. 2. However, there is no medical record indicating that Plaintiff saw Hargraves on that date. Plaintiff fails to allege what Hargraves did or did not do on that date, and Hargraves is unable to respond to this claim because there is nothing in the medical record indicating that she even saw him on this date. Plaintiff's claim against Hargraves should be dismissed.

## III.    <u>CONCLUSION</u>

Corizon Defendants respectfully request that Plaintiff's suit against them be dismissed for failure to state a claim or, since no dispute of material fact exists, that summary judgment be entered in their favor.

Submitted this 3rd day of August 2020.

Respectfully submitted,

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**

By: */s/ Jacqueline G. Greiss*
    Patricia H. Beall
    Bar Number: 29593
    PBeall@moodklaw.com
    Jacqueline G. Greiss
    Bar Number: 21234
    JGreiss@moodklaw.com
    600 Baltimore Avenue, Suite 305
    Towson, Maryland  21204
    (410) 339-6880
    *Attorneys for Corizon Health, Inc., Dr.*
    *Liberatus DeRosa, Millicent Jenkins, Dr. Paul*
    *Matera, Emmanuel Esianor, Dr. Kasahun*

*Temesgen, and Dr. Mofikpara Wright*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of August 2020, a copy of the foregoing

document was electronically transmitted to this Court and mailed first class, postage pre-paid to:

Dale Bigham
#368-567
MDDPC/DPSCS
P.O. Box 534
Jessup, MD 20794
*Pro Se Plaintiff*

***Via CM/ECF:***
Gina Marie Smith
Douglas Conrad Meister
Meyers Rodbell and Rosenbaum PA
6801 Kenilworth Ave. Ste. 400
Riverdale, MD 20737-1385
gsmith@mrrlaw.net
dmeister@mrrlaw.net

*/s/ Jacqueline G. Greiss*
Jacqueline G. Greiss