**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

DALE BIGHAM,

     Plaintiff,

     v.

WEXFORD HEALTH SOURCES, INC.,
CORIZON HEALTH, INC.,
DR. LIBERATUS DeROSA,
MILLICENT JENKINS, R.N.,
PAUL MATERA, M.D.,
BEN OTEYZA, M.D.,
BERNARD ALENDA,
*Nurse Practitioner*,
NICOLE HARGRAVES,
*Medical Health Services Administrator, JCI*,
EMMANUEL ESIANOR, P.A.,
DR. KASAHUM TEMESGEN and
DR. MOFIKPARA WRIGHT,

     Defendants.

Civil Action No. TDC-20-0345

---

**MEMORANDUM OPINION**

     Dale Bigham, an inmate incarcerated at the Jessup Correctional Institution ("JCI") in Jessup, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 in which he alleges that he received inadequate medical care in violation of his rights under the Eighth Amendment of the United States Constitution. He also alleges that his medical records were falsified and he was unable to file complaints because of the threat of retaliation. Defendants Wexford Health Resources, Inc. ("Wexford"); Dr. Liberatus DeRosa; Millicent Jenkins, R.N.; Dr. Paul Matera; Dr. Ben Oteyza; Emmanuel Esianor, P.A.; Dr. Kasahun Temesgen; Dr. Mokifpara Wright; Bernard Alenda, N.P.; and Nicole Hargraves, the Medical Services Administrator of JCI (collectively the

"the Wexford Defendants") have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment relating to the time period up to December 31, 2018, during which Wexford was the contract medical provider at JCI. Defendants Corizon Health, Inc. ("Corizon"), Dr. DeRosa, Nurse Jenkins, Dr. Matera, Esianor, Dr. Temesgen, Dr. Wright, and Hargraves (collectively the "Corizon Defendants") have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment relating to the time period from January 1, 2019 forward, during which Corizon was the contract medical provider at JCI. Although Bigham was provided with notice of Defendants' Motions and informed of his right to file memoranda in opposition to the Motions, he has filed no response to either Motion. Upon consideration of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions will be granted.

## BACKGROUND

Bigham, who has been incarcerated for over eight years, was born with scoliosis of the spine and degenerative disc disease. He alleges that his back condition has deteriorated, that there are bulges between his L-5 and S-1 spaces, that he has difficulty walking because of pain. He had two surgeries in 1994 prior to his incarceration, his specific back issues developed after a motor vehicle accident in 2001, and as of 2019, he had been suffering from lumbar disc disease for the past eight to nine years.

Bigham specifically alleges that Defendants have failed to provide adequate medical care for his conditions, including by failing to provide needed treatment, delaying treatment, and failing to investigate ways to address his conditions. Specifically, he alleges that the following Defendants "failed to appropriately address even the minimum required standards of medical care/treatment" for his back problems on these dates: Dr. Matera from December 22, 2014

2

forward; Alenda from December 22, 2014 to December 18, 2017; Dr. Oteyza from March 22, 2016 forward; Dr. DeRosa on October 11, 2017, February 13, 2018, September 14, 2018, October 18, 2018, and April 17, 2019; Jenkins on April 16, 2019; Esianor on April 16, 2019; Dr. Wright on July 29, 2019, August 14, 2019, August 16, 2019, October 7, 2019, and October 21, 2019; and Hargraves on January 24, 2020. He also alleges that Dr. Temesgen refused to approve medications prescribed for him by other medical providers.

As examples of inadequate care, Bigham alleges that when he requested a four-wheeled walker in early 2017, he instead received a two-wheeled walker, which causes him pain; that despite being informed that he would be sent outside of the prison for a magnetic resonance imaging ("MRI"), he has not received such an MRI over the past eight years; that he received physical therapy on only one occasion; and that he presently receives no pain medication. He further alleges that Esianor has falsified his medical records and that he cannot file internal Administrative Remedy Procedure complaints ("ARPs") out of fear of retaliation. Finally, he also asserts that several Defendants have acknowledged that Corizon has a policy of keeping medical care "to the extreme minimum, unless any person is dying." Am. Compl. at 4, ECF No. 6. He claims that this direction comes from the "higher echelon" of Corizon, id., which he asserts is part of the same business as Wexford, and that the savings go to bonuses for certain Defendants.

## I.   Wexford Care

According to Bigham's medical records, on February 22, 2017, shortly after Bigham was transferred to JCI from another prison, Bigham submitted a sick call request complaining of worsening low back pain and seeking renewal of an order granting him a bottom bunk for medical reasons. On February 26, 2017, Dr. Monica Stallworth examined Bigham. Although she was aware from his medical records that Bigham had a history of chronic back pain, had undergone a

cervical fusion with a bone graft from his hip, and had low back pain due to degenerative joint disease that radiated to the legs, she did not find him in distress.  She continued his existing prescriptions for Indomethacin and Amitriptyline for pain and renewed his bottom bunk order for one year.

On April 10, 2017, following another sick call request reporting chronic low back pain, Dr. Contah Nimely examined Bigham.  On that visit, Bigham reported no impairment of his activities of daily living ("ADLs").  Bigham stated that the Amitriptyline prescribed for him helped but did not resolve his pain.  Dr. Nimely increased the dosage of Amitriptyline through July 2017.

On July 12, 2017, Dr. Nimely again examined Bigham for chronic low back pain.  Bigham reported no impairment of his ADLs but stated that Amitriptyline did not relieve his pain.  Dr. Nimely renewed Bigham's prescription for Amitriptyline but also prescribed Mobic and Tylenol for pain.  On August 2, 2017, during a chronic care visit, Bigham told Nurse Practitioner Munjanja Litell that Mobic provided him good pain relief.

On October 11, 2017, Dr. DeRosa examined Bigham in the chronic care clinic.  After Bigham reported that his medications were not providing effective pain relief, and that Amitriptyline was effective only as a sleep aid, DeRosa discontinued the prescription for Amitriptyline and prescribed Cymbalta for pain.  DeRosa also recommended that Bigham continue spine conditioning exercises.  On December 18, 2017, based on a request from Bigham, Dr. DeRosa submitted a request that Bigham receive feed-in status, which allowed him to take his meals in his cell.

On May 21, 2018, Bigham submitted a sick call request seeking a chronic care appointment and complained that a prior appointment had been canceled.  The next day, during a visit with Motunrayo Adegorusi, a nurse practitioner, Bigham reported that Cymbalta did not adequately

address his pain. Adegorusi renewed the Cymbalta prescription but also prescribed Extra Strength Tylenol.

On July 25, 2018, Bigham filed another sick call slip complaining of numbness and low back pain at the L4-5 level of his spine. On August 15, 2018, Jenkins provided a back brace to Bigham. On August 16, 2018, Bigham told Adegorusi that he was not receiving his Cymbalta, and his pain medications were renewed. On October 25, 2018, Jenkins issued a cane to Bigham to facilitate his movement with back pain.

On November 4, 2018, after Bigham reported that he was not taking his medication, Dr. Darryl Hill discontinued the Cymbalta prescription with Bigham's agreement. As Bigham continued to report severe chronic pain, Dr. Hill prescribed Tramadol for the pain.

On November 27, 2018 and December 6, 2018, Bigham filed sick call requests complaining of low back pain, numbness in his toes, and difficulty sleeping and walking due to pain, and he requested a walker. During a visit on December 6, 2018, Bigham asked for Tramadol, and a nurse practitioner reviewed his prescriptions and noted that the Tramadol prescription remained active. On December 26 and 27, Bigham submitted additional sick call requests complaining of his back pain and requesting a walker and renewal of his feed-in cell order. During a visit with a nurse on December 27, 2018, Bigham complained that he was dizzy, had fallen in the medication line, and was unsteady with a cane. Bigham rated his pain as 10/10. Though the nurse observed Bigham's gait was steady, she advised Bigham to submit a sick call request to be evaluated for a walker. She renewed his feed-in status for one month.

On December 31, 2018, Wexford ceased to be the contract medical provider for Maryland prisons.

## II.    Corizon Care

On January 1, 2019, Corizon became the contract medical provider for Maryland prisons. On January 2, 2019, during a visit with a physician's assistant, Bigham reported falling several times, most recently on December 27, 2018, when he was using a cane. Bigham also complained that his low back pain radiated to his left leg, his toes were numb, and his leg was "giving out" intermittently. Med. Records at 53, ECF No. 26-4. The physician's assistant contacted Jenkins to request a walker for Bigham and renewed the order for feed-in status for one year.

On January 25, 2019, Bigham saw Adegorusi for pain management. After Bigham reported that Tramadol and Tylenol were providing him with adequate pain relief, Adegorusi submitted another non-formulary drug request for Tramadol, which Dr. Temesgen approved. On February 5, 2019, Bigham was provided with a two-wheeled walker. On February 9, 2019, he requested that it be exchanged for a four-wheeled rolling walker.

On March 10, 2019, Bigham complained during a sick call visit of back pain and requested more pain medication. Because Bigham's Tramadol prescription was current, the nurse practitioner ordered 400 mg of Ibuprofen for him for the next month.

On April 16, 2019, Bigham met with Jenkins about his request to exchange his two-wheeled walker for a four-wheeled rolling walker with a seat. In a declaration, Jenkins has explained that she determined that a four-wheeled walker was inappropriate for Bigham because it continues rolling once it starts unless the patient uses the hand brake to stop it, and that Bigham would have had great difficulty using the hand brake. In her judgment, he was not stable enough to push the walker and use the hand brake, so she did not approve it for safety reasons.

Also on April 16, 2019, Bigham saw Esianor about his back pain, reported that Tramadol and Tylenol Extra Strength were proving ineffective, and requested additional pain medication.

6

Esianor decided to order Biofreeze gel for Bigham, which is another type of pain reliever but in gel form. Bigham refused to allow Esianor to conduct a full medical examination. Although Bigham has claimed that Esianor falsified the medical records relating to this visit, Esianor has submitted a declaration in which he denies doing so.

On April 17, 2019, Bigham was seen by Dr. DeRosa. Bigham stated that his pain was continuing to worsen and that he was unable to walk any distance without pain. Bigham also requested a sitting walker. Dr. DeRosa performed a physical examination and concluded that Bigham did not need a sitting walker for the few trips he made. After DeRosa adjusted the height of the walker, Bigham stated that he felt much better support.

During the physical examination, Bigham displayed severe left radiculopathy and numbness on the left lower leg laterally and medially. He had decreased position sense to the legs, without motor weakness, and his deep tendon reflexes ("DTR") were greater on the right leg than the left, with sensations and DTR reduced on the left. Dr. DeRosa submitted a request for a lumbar spine MRI to evaluate the numbness in the left leg in order to rule out a correctable nerve compression. He also submitted a non-formulary request for Tramadol, which was approved by Dr. Temesgen.

On July 8, 2019, Bigham saw nurse practitioner Bernard Alenda for complaints of headaches and requested a change to a pain reliever other than Tramadol. Alenda prescribed Tylenol No. 3 and Robaxin. On July 25, 2019, a nurse practitioner informed Bigham that he had an upcoming lumbar MRI. On July 29, 2019, Dr. Wright examined Bigham and found tenderness in the posterior spine and paravertebral muscle spasm. Bigham reported that he occasionally wobbled while walking with his two-wheeled walker and again requested a four-wheeled walker.

On August 14, 2019, Bigham had an appointment for an MRI of the lumbar spine at Bon Secours Hospital. The MRI found degenerative changes at L3-4 through L5-S1 but was incomplete because Bigham got claustrophobic in the MRI machine. On August 16, 2019, Dr. Wright submitted a request for an open MRI scan of the lumbosacral spine. On October 7, 2019, Dr. Wright submitted a follow-up request for the open MRI.

On October 21, 2019, Bigham saw Dr. Wright for a chronic care visit. Bigham reported shooting pain down both legs, numbness in the toes of his left foot, and increased difficulty walking with the walker. Bigham, who was already housed in a handicapped cell with bed rails to aid him in walking, requested a wheelchair. He stated that his current pain medications provided relief only for a few hours. Dr. Wright requested a wheelchair and continued Bigham's medications. On October 24, 2019, Bigham had an open MRI of the lumbar spine at the Johns Hopkins Hospital Outpatient Center. The MRI showed "(1) multi-level disc degeneration and facet hypertrophy, resulting in mild neuroforaminal narrowing at L3-4, L4-5, and L5-S1; (2) Grade 1 retrolisthesis L4 on L5; and (3) degenerative changes at L5-S1 with significant loss of intervertebral disc height." Med. Records at 65, ECF No. 33-6.

On November 6, 2019, Dr. Wright submitted a nonformulary order for Tylenol No. 3 for Bigham. On November 13, 2019, Dr. Temesgen approved the request for a 21-day supply. On December 5, 2019, Bigham received a wheelchair. On December 17, 2019, Bigham received a prescription for Naprosyn, another pain reliever.

On January 9, 2020, Dr. Wright met with Bigham to discuss the MRI results. Bigham was reporting that his pain was 7/10 and that Naprosyn was providing no helpful relief. Dr. Wright prescribed Tylenol No. 3 and Cymbalta for pain and submitted a request for a consultation with an orthopedist. On January 21, 2020, during a visit with Dr. Wright, Bigham complained of

increasing low back pain, reported as 8/10, with numbness in the toes on his right foot. Bigham said Cymbalta did not provide him with effective pain relief.

On March 5, 2020, Bigham was seen by a nurse practitioner who informed him that there had been a request for a consultation with an orthopedist. On March 18, 2020, Bigham reported to Dr. Wright continuing chronic pain radiating to his legs with numbness in his toes. Bigham was wheelchair bound and unable to stand without support. Because Bigham stated that Cymbalta provided no pain relief, that medication was discontinued.

On June 18, 2020, Bigham saw Alenda for his low back pain and neuropathy. Alenda re-prescribed Tramadol for Bigham's pain. Dr. Temesgen approved the non-formulary request for Tramadol. On July 22, 2020, Bigham spoke by telephone with Dr. Temesgen for a pain management review. Dr. Temesgen concluded, based on Bigham's statements, that Bigham's pain medications were providing adequate pain control. He also concluded that Bigham needed an orthopedics consultation and submitted a request.

According to Dr. Temesgen, the Regional Medical Director for Corizon, Bigham's October 24, 2019 MRI showed mild foraminal narrowing and a mild loss of disc space. In his view, surgery is not a likely next step because neurosurgeons do not operate unless there is a severe spinal stenosis or signs of spinal cord compression, neither of which is present. Nevertheless, he recommended an orthopedic consultation because an orthopedist "could recommend more conservative treatment such as epidural steroid injections or physical therapy." Temesgen Decl. ¶ 6, ECF No. 33-10. Due to the COVID-19 pandemic, however, all outside referrals are currently on hold unless the consultation is for a life-threatening condition, which Bigham's condition is not. In Dr. Temesgen's medical opinion, the care and medications provided to Bigham have been appropriate. Dr. DeRosa concurs in that opinion.

Dr. Temesgen and Dr. DeRosa both deny Bigham's assertion that Corizon has a policy of keeping medical care to a minimum unless the patient is dying. In his declaration, Dr. Temesgen states that Corizon medical providers use their medical judgment to determine the appropriate course of treatment for each patient. Dr. Temesgen denies that Corizon medical providers withhold medical care to save money from which they receive year-end bonuses or that Corizon has a bonus incentive program to reward health care providers who withhold medically necessary care.

Bigham filed his original Complaint on February 3, 2020 and, at the Court's direction, filed an Amended Complaint on March 16, 2020. Bigham alleges that Defendants provided him with constitutionally inadequate medical care for his chronic back pain, in violation of the Eighth Amendment. He also alleges that Esianor falsified his medical records, that he was unable to file ARPs out of fear of retaliation, and that Corizon has a policy of keeping medical care to a minimum. Bigham seeks compensatory and punitive damages, as well as injunctive relief, including an order that Defendants treat his medical condition.

## DISCUSSION

In their Motions, the Wexford Defendants and the Corizon Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or summary judgment pursuant to Rule 56. Defendants argue that Bigham has failed to state a plausible claim for relief, and that there is no genuine dispute of material fact whether they acted with deliberate indifference to Bigham's serious medical needs in violation of the Eighth Amendment. The Wexford Defendants also assert that certain claims are barred by the statute of limitations.

10

## I.     Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Def. v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007). Courts must treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Here, the notice requirement has been satisfied by the title of Defendants' Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing,

explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Bigham has not responded to the Motions and thus has not asserted that he needs additional discovery in order to address the Motions. The Court therefore will construe Defendants' Motions as motions for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II.     Eighth Amendment

The Eighth Amendment, which protects prisoners from "cruel and unusual punishment," prohibits "unnecessary and wanton infliction of pain" against inmates. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). In order to state an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act

amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d at 225 (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

13

A review of Bigham's allegations and the record evidence establishes that Bigham has not provided a sufficient basis to proceed further on his deliberate indifference claim. Although there is no dispute that Bigham's back condition was an objectively serious medical condition, the record does not support the conclusion that Defendants, individually or collectively, acted with deliberate indifference to his medical needs. The record reflects that from 2017 to 2020, Defendants and other medical staff regularly conducted examinations and medical visits to address Bigham's back condition, within a reasonable time period after he made sick call requests. Contrary to Bigham's claim that he never received pain medication, the records establish that the medical providers routinely prescribed pain relievers, including Amitriptyline, Cymbalta, Tramadol, Tylenol No. 3, Naprosyn, and others, and that they adjusted doses and switched among pain relievers when he reported that some were proving ineffective. The records also establish that Dr. Temesgen regularly approved these pain medications. Although the pain medication did not resolve all of Bigham's pain, the history of prescribing such medication reveals a reasonable response to his condition and a lack of disregard for it. *See Farmer*, 511 U.S. at 844.

Likewise, Bigham's claim that he never received an MRI is squarely refuted by the medical records reflecting that he was recommended for an MRI in April 2019, received an incomplete MRI on August 14, 2019, and received a complete, open MRI on October 24, 2019. Notably, there is no evidence that an MRI was needed before those times, and based on Dr. Temesgen's unrefuted opinion, the MRI results do not reveal any previously undiagnosed need for surgery. There may be a fair question whether the present understanding that Bigham should receive an orthopedic consultation to allow for consideration of other forms of treatment could have been reached earlier, as it was first recommended in January 2020 and has not occurred because of the COVID-19 pandemic, or that physical therapy could have been attempted earlier. In the context of the entire

14

treatment history, however, which included repeated medical visits, regular adjustments to pain medication, the provision of walkers, canes, and feed-in and bottom-bunk status, and the provision of MRIs, any such failures would amount only to negligence and do not meet the high standard of deliberate indifference to a serious medical need. *See Scinto*, 841 F.3d at 225.

As to the specific claim that Bigham was improperly denied a four-wheeled walker in April 2019, Jenkins, who made the decision to deny Bigham's request to switch from a two-wheeled walker to a four-wheeled walker, has provided a declaration stating that the decision was based on her medical judgment that with his back condition, Bigham could not safely operate the four-wheeled walker, which required the use of a hand brake to stop it from rolling. This conclusion was supported by Dr. DeRosa. Where Bigham has provided no basis to conclude that Jenkins's determination reflected a subjective knowledge that the failure to provide the four-wheeled walker created an excessive risk to Bigham's health and safety, his claim amounts to only a disagreement with a medical decision, which is insufficient to support a claim of deliberate indifference. *See Jackson*, 775 F.3d at 178; *Scinto*, 841 F.3d at 225.

Finally, the record does not support claims of deliberate indifference against the specific Defendants. The claim against Jenkins, which is focused on the provision of the walker, and the claim against Dr. Temesgen, relating to the alleged failure to approve pain medications, have already been addressed. The claims against Dr. Matera and Dr. Oteyza are based on unspecified claims of deficient treatment in 2014 and 2016, respectively, that are too vague to state a plausible claim for relief, and the record provides no evidence of any more recent participation in Bigham's care by these Defendants.

On the identified date in question, April 15, 2019, Esianor ordered Biofreeze for pain relief. Likewise, Alenda's involvement with the treatment of Bigham's back pain consisted of re-ordering

or changing Bigham's pain medications on two occasions, July 8, 2019 and June 18, 2020. On the only identified dates when Dr. DeRosa saw Bigham to address his back pain, Dr. DeRosa ordered Cymbalta on October 11, 2017 and declined the four-wheeled walker but ordered an MRI on April 17, 2019. In the absence of any specific basis to conclude that the pain medications prescribed were inappropriate, these actions all reflect reasonable responses to Bigham's condition and, at most, reflect a disagreement between a patient and a physician that does not establish deliberate indifference. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985).

On the identified dates between July 29, 2019 and October 21, 2019, Dr. Wright examined Bigham in advance of his August 14, 2016 MRI and then ordered an open MRI after the first MRI was deemed incomplete due to Bigham's claustrophobia. That second MRI occurred on October 24, 2019. With these procedures scheduled at the time of the examinations, the lack of additional treatment other than continuing pain medications and providing a wheelchair did not amount to deliberate indifference. Lastly, the allegations against Hargraves relating to January 24, 2020 are too vague to support a claim and are in any event unsupported by medical records. The Motions will be granted as to the individual Defendants.

As for the claims against Wexford and Corizon, they also fail. As private entities providing legally required health care for the Maryland prison system, Wexford and Corizon may be held liable under § 1983 only to the extent that individual medical providers violated Bigham's constitutional rights, and the violation was caused by an unconstitutional custom or policy, such as a policy of deliberate indifference to serious medical needs. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 690-91 (1978). First, as discussed above, the evidence does not support a finding of a deliberate indifference by the individual medical providers, so there is no basis for liability

against Wexford or Corizon. *See Monell*, 436 U.S. at 692. Second, although Bigham has generally asserted that Corizon directs its personnel to keep medical care "to the extreme minimum unless any Person is dying," supposedly to pay for bonuses for Corizon staff, Am. Compl. at 4, this claim is based on alleged statements by unidentified Defendants. Where Dr. DeRosa and Dr. Temesgen have specifically denied, in their declarations, the existence of such a custom or policy, and Bigham has not even identified the individuals who purportedly told him of such a policy, he has not provided sufficient evidence to establish a genuine issue of material fact on this question. The Motion will be granted as to Corizon and Wexford as well.

**III.    Remaining Claims**

Bigham alleges that on or about April 16, 2019, Esianor falsified his medical records, in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996), and the "OIHS/OTS" manual, and he otherwise makes general, non-specific allegations of falsification of other records. Compl. at 2, ECF No. 1. Although HIPAA establishes standards and regulations to protect the privacy and accuracy of medical records, and it prohibits the wrongful disclosure of unique health identifiers or individually identifiable health information, it does not provide a private right of action. 42 U.S.C. § 1320d-6 (2018); *see, e.g., Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019); *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); *Miller v. Nichols*, 586 F.3d 53, 59-60 (1st Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) (per curiam); *Tarpley v. Pierce*, No. GLR-17-3267, 2018 WL 4616058, at \*10 (D. Md. Sept. 26, 2018) (holding that because there is no private right of action under HIPAA, there was no viable HIPAA claim based on the presence of a correctional officer during a medical appointment). Bigham does not define the acronym

"OIHS/OTS" or explain why failing to comply with it would violate the Constitution or federal law. Finally, even if Bigham had identified a viable legal claim, Esianor has submitted a declaration denying any falsification of records, and Bigham, who has not even identified the specific information he deems to be false, has provided no specific facts that would create a genuine issue of material fact on this issue. The Court will therefore grant the Motion on these claims.

Bigham alleges that he was and remains in fear of retaliation by prison officials should he file an ARP because he has seen medical and correctional staff "team[]-up with each other to apply or impose acts of retaliation" on inmates. Compl. Ex. 2 at 1, ECF No. 1-2. To the extent that this allegation was intended to assert a separate cause of action, it is most fairly construed as a claim that he suffered retaliation for exercising his First Amendment rights. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). An action adversely affects a plaintiff's First Amendment rights if it would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500).

Bigham has neither alleged nor offered evidence of any facts to support such a claim. He has not alleged that he was actually threatened with retaliation if he filed an ARP request, or that

he was actually subjected to retaliatory action.  More importantly, regardless of whether he filed an ARP, he has exercised his First Amendment rights by filing the present case, and any failure to file an ARP is not preventing the Court from considering his claims.  In the absence of facts that could demonstrate actual retaliatory action by Defendants or a causal link between protected First Amendment activity and a materially adverse action against him, any First Amendment retaliation claim must be dismissed.

Finally, although Bigham makes brief mention of the Americans with Disabilities Act ("ADA"), which prohibits the exclusion of qualified individuals with disabilities from participation in or receiving the benefits of the services, programs, or activities of a public entity, 42 U.S.C. § 12132, he provides no facts supporting any plausible claim of a violation of this provision.  Accordingly, any ADA claim must be dismissed.

**CONCLUSION**

For the foregoing reasons, the Wexford Defendants' and the Corizon Defendants' Motions to Dismiss or, in the Alternative, Motions for Summary Judgment, will be granted.  A separate Order shall issue.


Date:  January 22, 2021

THEODORE D. CHUANG
United States District Judge